**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-03232-CMA-STV

JOHN TODD, and
KENDRA TODD,

      Plaintiffs,

v.

USAA GENERAL INDEMNITY COMPANY,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant USAA General Indemnity Company's ("USAA") Motion for Summary Judgment. (Doc. # 61.) For the following reasons, the Court grants in part and denies in part the Motion.

## I.    BACKGROUND

This is an insurance case relating to damage to Plaintiffs John Todd and Kendra Todd's home as a result of a frozen and burst water pipe. Unless otherwise indicated, the following facts are undisputed for purposes of this summary judgment motion.

On or around April 24, 2020, Plaintiffs purchased a residential property in Colorado Springs, Colorado ("Property"). (Doc. # 21 at 7.) Plaintiffs insured the Property with Defendant USAA under a homeowner's insurance policy ("Policy"), effective April 24, 2020, to April 24, 2021. (*Id.*; Doc. # 61-19 at 2.) The Policy provided coverage for

"sudden and accidental direct physical loss" to the Property unless the loss is subject to an exclusion from coverage. (Doc. # 61-19 at 23.)

The Policy also provided "ADDITIONAL COVERAGES" including for "collapse":

> Unless specifically addressed elsewhere in this policy, the coverages provided [in this section] are the only coverages provided for the following. The SECTION I – LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.
>     . . .
>     8. "Collapse" For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property including "collapse" of a building or any part of a building only when the "collapse" is caused by one or more of the following:
>         a. "Named peril(s)" . . . .

(*Id.* at 19, 46.) The Policy defined "Collapse" as "a. A sudden falling or caving in; or b. A sudden breaking apart or deformation such that the building or part of a building is imminent peril of falling or caving in and is not fit for its intended use."[1] (*Id.* at 45.) The Policy defined "named peril(s)" as "one or more of the perils listed under LOSSES WE COVER – PERSONAL PROPERTY PROTECTION." (*Id.* at 10.) Losses listed in that section include: "12. Discharge or overflow of water . . . from within a plumbing . . . system," and "14. Freezing of a plumbing . . . system."[2] (*Id.* at 24.)

Among others, the Policy contained the following exclusionary provisions: "b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to

---

[1] This definition of "collapse" is contained within an endorsement to the Policy. (Doc. # 61-19 at 45.) The endorsement removed the following language from the previous definition of "collapse": "[d]amage consisting solely of settling, cracking, shrinking, building or expansion is not covered by this additional insurance unless it is the direct result of 'collapse.'" *Compare* (*id.*), *with* (*id.* at 9.)

[2] Coverage for the Freezing peril is excluded if the insured has failed to "(1) Maintain heat in the building; or (2) Shut off the water supply and drain the system and appliances of water[.]" (Doc. # 61-19 at 24.) No such failure is alleged in this case.

a: . . . (3) Foundation . . . ," and "k. Settling; cracking; shrinking; building or expansion of . . . foundations; [or] walls; . . . ." (*Id.* at 25.) However, if these excluded losses "directly cause[d] a 'named peril(s) to occur, the resulting damage produced by the 'named peril(s)' is covered unless otherwise excluded or excepted elsewhere in this policy." (*Id.*)

Additionally, the Policy excluded coverage for "b. Earth Movement arising from or caused by or resulting from human or animal forces or any act of nature, meaning: . . . (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;" (*id.* at 26), and

> c. Water Damage arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:
> . . .
> (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on . . . [a] foundation . . . .

(*Id.*) All four of these exclusions applied "regardless of . . . (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to produce the loss." (*Id.* at 24, 26.)

Finally, the Policy imposed on Plaintiffs certain "Duties After Loss," including to "Provide [USAA] with records and documents [it] request[s] . . . As often as [it] reasonably require[s.]" (*Id.* at 30.)

On or about February 16, 2021, a water pipe located in an uninsulated crawl space at the Property froze and burst. (Doc. # 21 at 7; Doc. # 72-1 at 1.) That same day Plaintiffs reported a claim to USAA and a water damage mitigation company, Pro-Dry, found more than 800 gallons of water flooding the Property's basement to a depth of 12 inches. (Doc. # 21 at 7; Doc. # 72-1 at 1; Doc. # 72-4 at 2.) The Property's hot water

heater and furnace are located in the basement and can be seen in some of Pro-Dry's photos taken the day of the claim. (Doc. # 72-1 at 3–4.) In addition, the interior of a load-bearing basement wall had newly formed longitudinal cracks in the area immediately adjacent to the burst pipe. (Doc. # 72-3 at 16–18, 21.)

Plaintiffs' home was deemed uninhabitable as it lacked power and water. (Doc. # 72-4 at 4; Doc. # 72-12 at 14.) USAA paid for a hotel room for Plaintiffs, but after a week Plaintiffs requested to move to a short-term rental, citing lack of access to a kitchen and laundry. (Doc. # 72-4 at 6.) USAA claims adjuster Christine Nobles informed Plaintiffs that such accommodations would have to be paid for out of their pocket and USAA would reimburse Plaintiffs for no more than the amount it was paying for the hotel.[3] (*Id.*)

An independent adjuster, Scott Shepard, hired by USAA, inspected the Property on March 1, 2021. (*Id.* at 10.) He informed USAA that Plaintiffs and their contractor, Rich Lawson, reported that the longitudinal crack in the interior basement wall had "increased dramatically over the last 3 to 4 days . . . to 1/2 [inch] or more and have radiated across the length and height of the wall." (*Id.*) Mr. Shepard opined that "[a]t the rate of expansion they are claiming, the wall could fail catastrophically in a short period of time. At the least, temporary shoring will be needed." (*Id.*); *see also* (Doc. # 72-11 at 9.) That same day, Ms. Nobles noted concerns regarding earth movement and ground water coverage. (Doc. # 72-4 at 11.) She spoke to her manager before making the following claim note: "They [sic] hydro static pressure is caving in the main structure. . . . Discussed with [manager]. Pipe froze, we owe for damages. Plumbing damage, caused

---

[3] USAA later paid for Plaintiffs to move into a rental home. *See* (Doc. # 72-4 at 24, 27, 31.)

pressure and we owe. . . . Sending [Mr. Shepard] back out to get est[imate] since this is a covered loss." (*Id.* at 11.) Ms. Nobles also messaged Plaintiffs stating, "I am sending back [Mr. Shepard] to get estimate for repairs since this is a covered loss."[4] (*Id.*) Mr. Shepard later prepared an estimate identifying $20,663.71 in losses to Plaintiffs' home, including $7,568.00 to remove and replace the cracked load-bearing basement wall.[5] (Doc. # 72-6 at 1, 6.)

A Colorado licensed professional engineer, Douglas Pretzer, was hired and performed a "foundation evaluation" of the Property on March 24, 2021. (Doc. # 61-6.) Mr. Pretzer observed that "[t]he east basement foundation wall between the basement and crawl space has experienced significant lateral pressure" and had "several horizonal cracks running the length of the wall." (*Id.* at 1.) Mr. Pretzer opined that "[t]he cracks are a result of an increased [sic] in lateral soil pressure caused by the water [from the burst pipe] in combination with the clay soils which expanded and pushed horizontally against the wall." (*Id.*) "[L]ack[ing] sufficient strength to resist the lateral pressures[, the wall] cracked." (*Id.*)

On May 12, 2021, USAA informed Plaintiffs that the damage to their basement wall was not covered pursuant to the freezing and Earth Movement exclusions. (Doc. #

---

[4] USAA denies that Ms. Nobles communicated to Plaintiffs that the damage to the load-bearing wall was a covered loss. (Doc. # 76 at 4.) Ms. Nobles testified that she "only explained to [Plaintiffs] that the ensuing water damage would be covered. . . . We never discussed the coverage for a cracked wall because . . . without getting the report from the engineer, we won't be saying if there is definitely coverage or no coverage." (Doc. # 72-12 at 25–26.)

[5] Mr. Shepard testified that he included the cost to repair the load-bearing wall in this estimate upon the request of USAA based on early March 2021 communications indicating this was a covered loss. (Doc. # 72-11 at 10, 22–24.)

72-4 at 21.) A denial letter dated July 13, 2021, also lists the below-the-surface water pressure, and settling/cracking exclusions quoted above as reasons for denying Plaintiffs coverage for damage to their basement wall. (Doc. # 61-7 at 1; *see also* (Doc. # 61-19 at 25–26.) Following this denial, Mr. Shepard updated his estimate to remove the costs associated with replacing the wall. (Doc. # 68-8 at 1.) The revised estimate totals $1,694.26 in replacement cost value, which is less than the Policy's $2,000 deductible. (*Id.*) At this point, USAA also declined to extend benefits for Plaintiffs' temporary accommodations beyond July 15, 2021. (Doc. # 72-4 at 31; Doc. # 72-14 at 49.) As of that date, USAA had not paid for repairs to Plaintiffs' home and had no information regarding whether the conditions that had rendered the home uninhabitable had been repaired.[6] (Doc. # 72-14 at 49–50.)

On March 30, 2021, USAA asked Plaintiffs if they had received a cause of loss and repair report from their plumber; to which Mr. Todd responded that he had not. (Doc. # 72-4 at 17.) On June 9, 2021, Plaintiffs and Mr. Lawson provided USAA with an estimate for necessary repairs to Plaintiffs' home as a result of the burst water pipe. (Doc. # 61-10 at 1; Doc. # 61-11 at 1–9.) Attached to this estimate was an itemized plumbing estimate totaling $9,000, and an estimate of $4,536.42 to replace the home's furnace and hot water heater, prepared by Advantage Heating and Cooling. (Doc. # 61-11 at 8–9.) A series of communications regarding these items ensued during which USAA requested—on at least seven occasions—additional information regarding the

---

[6] USAA maintains that additional living expenses were authorized for "a reasonable amount of time to allow for **covered** repairs." (Doc. # 76 at 5 (citing Doc. # 72-14 at 49.))

furnace and hot water heater including "what parts are damage[d], what caused the damage, brand, model, [serial number,] size and age of the original unit and if it can be replaced and if not why." (Doc. # 61-10 at 2–6; Doc. # 61-12 at 3; Doc. # 61-17 at 3.) USAA also noted that the plumbing estimate included damages not covered by the Policy. (Doc. # 61-10 at 1–2.)

Plaintiffs responded by (1) resending the previously submitted estimates, (2) stating that they would ask their contractor for the information USAA requested, (3) providing photographs of the furnace and hot water heater as well as the photo damage report from Pro-Dry,[7] (4) providing an email from Advantage which states "we definitely recommend replacement [of furnaces] in flooding instances" due to dangers of mold and mildew, as well as damage to electrical components and the heat exchanger, and (5) providing a second quote for the furnace from a different company. (Doc. # 61-10 at 3–6; Doc. # 61-14 at 1–2; Doc. # 61-15 at 2; Doc. # 61-18 at 1.) However, USAA advised Plaintiffs that these communications did not contain the information it needed to evaluate their claim.[8] (Doc. # 61-10 at 1, 3–6; Doc. # 61-12 at 3.) USAA also reached out to Advantage directly for the information regarding the damaged furnace. (Doc. # 61-10 at 6.) Although Advantage advised USAA that flooding "fries the circuits" in a

---

[7] USAA asserts that the photos lack necessary information including the depth of the water surrounding these appliances, as well as their brand, model, size, and serial numbers. (Doc. # 61-14 at 1–2; Doc. # 76 at 3); *see also* (Doc. # 72-1 at 3–4; Doc. # 72-14 at 27.)

[8] Plaintiffs repeatedly aver that they told USAA that documents containing requested information regarding the plumbing, furnace, and hot water heater did not exist. (Doc. # 72 at 16–18.) However, the above quoted statement by Mr. Todd—that he had not received the plumber's cause of loss and repair report—is the only evidence cited in support. (*Id.*) USAA contends that it was unaware the information it requested did not exist until after litigation was initiated. (Doc. # 76 at 9.)

furnace, Advantage did not conduct a diagnostic or have the other information USAA sought. (*Id.*; Doc. # 72-4 at 42.) At no time did USAA hire a service provider or request that Mr. Shepard retrieve the information it required. (Doc. # 72-11 at 16, 28; Doc. # 72-13 at 20; Doc. # 72-14 at 15, 18.)

In total, USAA paid $27,567.18 for temporary housing and food for Plaintiffs between February 16 and July 15, 2021, $3,818.45 for Plaintiffs' personal property damaged by water from the burst pipe, and $3,062.15 for the services of the water damage mitigation company. (Doc. # 61-9 at 1; Doc. # 72-4 at 29.) However, USAA did not make payments for plumbing, or to repair or replace Plaintiffs' load-bearing basement wall, hot water heater, or furnace. (Doc. # 61-7 at 1; Doc. # 61-9 at 1; Doc. # 72-4 at 21; Doc. # 72-13 at 19; Doc. # 72-14 at 35.)

Plaintiffs initiated this action on October 18, 2021, in Colorado state court. (Doc. # 5.) They allege three claims for relief against USAA: (1) breach of contract; (2) common law bad faith breach of insurance contract; and (3) statutory unreasonable delay or denial of benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116. (*Id.* at ¶¶ 104–21.) USAA removed the case to federal court on December 2, 2021. (Doc. # 1.)

On September 5, 2023, USAA filed the instant Motion for Summary Judgment on all Plaintiffs' claims. (Doc. # 61.) Plaintiffs filed their Response (Doc. # 72), and USAA followed with its Reply (Doc. # 76). The matter is now ripe for review.

## II.   <u>LEGAL STANDARD</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated

differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

## III.   DISCUSSION

### A.   BREACH OF CONTRACT

Plaintiffs allege that USAA breached its obligations under the Policy by

(1) delaying benefits for known aspects of the loss; and (2) denying coverage and refusing to pay benefits for covered damage, including but not limited to damage to the [Property]'s furnace, hot water heater, destabilized land, and cracked foundation.

(Doc. # 5 at ¶ 106.) As an initial matter, the Court notes that although USAA argued that exclusions under the Policy preclude coverage for damage to land (Doc. # 61 at 19), Plaintiffs did not address this argument in their Response. *See generally* (Doc. # 72.) "A plaintiff's failure to address her asserted claim in a response to a motion for summary judgment is proper grounds to grant summary judgment in the defendant's favor." *Pittman v. Wakefiled & Assocs.*, No. 16-cv-02695-RBJ-KMT, 2017 WL 5593287, at *5 (D. Colo. Nov. 21, 2017) (citing *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x. 749, 768–69 (10th Cir. 2001); *Hutton v. Woodall*, 70 F. Supp. 3d 1235, 1239 (D. Colo. 2014)). Accordingly, the Court concludes that USAA is entitled to summary judgment on Plaintiffs' breach of contract claim as it relates to any alleged damage to land.

Turning to the briefed elements of this claim, USAA asserts that it is entitled to summary judgment because coverage for the load-bearing wall is barred by various Policy exclusions, and coverage for the plumbing, furnace, and hot water heater is

barred by Plaintiffs failure to provide it with information necessary to fully evaluate these elements of their claim.[9] (Doc. # 13 at ¶¶ 2, 8; Doc. # 61 at 16–18, 21–24.)

Coverage for the load-bearing basement wall turns principally on insurance policy interpretation: whether the Policy exclusions noted above operate to preclude coverage in the given circumstances and whether the additional coverage for "collapse" restores coverage or creates ambiguity regarding this loss. The Court, therefore, begins by reviewing the standards for interpreting insurance policies in Colorado.

1.     Interpretation of Insurance Policies under Colorado Law

In a diversity case such as this, the Court applies Colorado law and interprets insurance policies as a Colorado court would. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1286 (10th Cir. 2006). Under Colorado law, "[i]nsurance policies are subject to contract interpretation." *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050 (Colo. 2011). Insurance policies "must be given effect according to the plain and ordinary meaning of their terms." *Id.* at 1051 (quoting *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 59 (Colo. 1990) (emphasis removed)). "In determining the plain and ordinary meaning of a term in an insurance policy, the Colorado Supreme Court has eschewed the use of 'technical readings' and instead looks to 'what meaning a person of ordinary intelligence would attach to' a policy term." *Sullivan v. Nationwide*

---

[9] USAA also argues that the Policy did not provide coverage for the load-bearing basement wall because "[d]amage to the Property's exterior foundation existed before the Policy took effect and was not 'sudden and accidental.'" (Doc. # 61 at 15.) The Court declines to consider these arguments as it concludes applicable Policy exclusions are determinative of coverage for this loss.

*Affinity Ins. Co. of Am.*, 842 F. App'x 251, 254 (10th Cir. 2021) (unpublished) (quoting *Bailey*, 255 P.3d at 1051).

Accordingly, Colorado courts honor "the doctrine of reasonable expectations." *Bailey*, 255 P.3d at 1048. Pursuant to this doctrine, courts will not enforce an exclusion provision "where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue." *Id.* at 1050. The court must consider the policy as a whole, rather than reading provisions in isolation. *See id.* at 1051 (citing *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)). If, based on how an ordinary, objectively reasonable insured would read the policy, "the question of whether certain coverage exists is 'susceptible to more than one reasonable interpretation,'" then "the coverage provisions are ambiguous" and must "be construed against the insurer as the drafter of the policy." *Id.* (quoting *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005)). Whether ambiguity exists "is always an objective test": Policy terms "should be read in the sense in which the insurer had reason to believe they would be interpreted by the ordinary reader and purchaser." *Id.* (quoting *Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo. 1986)). However, the doctrine "does not contemplate the expansion of coverage on a general equitable basis." *Sullivan*, 842 F. App'x at 254 (quoting *Bailey*, 255 P.3d at 1054).

The insurer bears the burden of establishing that an exclusion is not subject to any other reasonable interpretation. *See Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991). If an insurer shows that an exclusion applies, the burden then

shifts back to the insured to prove the applicability of an exception to the exclusion. *See Leprino Foods*, 453 F.3d at 1287. "Any exclusion must be clear and specific to be enforceable." *Id.* (quoting *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1301 (Colo. App. 1998)).

      2.   <u>Application – Load-Bearing Basement Wall</u>

After carefully reviewing the language of the Policy, the parties' briefing, and all applicable law, the Court concludes that one or more of the exclusions cited by USAA in its denial letter bars coverage for the damage to Plaintiffs' load-bearing basement wall. *See* (Doc. # 61-7 at 1.) The engineer's report opined that the newly formed cracks were "a result of an increased [sic] in lateral **soil pressure** caused by the water [from the burst pipe] in **combination** with the **clay soils** which **expanded** and pushed horizontally against the wall." (Doc. # 61-6 at 1 (emphasis added).)

The plain language of the Earth Movement exclusion, alone or in combination with other exclusions in the policy, precludes coverage for this loss. The Policy states that USAA does "not insure for damage . . . caused directly or indirectly by . . . Earth Movement," which is explicitly defined to include "**expanding** or contracting of earth, all **whether combined with water** or not." (Doc. # 61-19 at 26 (emphasis added)); *Wagner v. Am. Fam. Mut. Ins. Co.*, 569 F. App'x 574, 575, 577, 579 (10th Cir. 2014) (concluding that an earth movement exclusion "squarely" applied to preclude coverage for damage to a home caused by water from a leaking pipe eroding soil under the home resulting in settlement and cracking of the foundation). Similarly, the Policy's Water Damage exclusion defines "Water Damage" to include "damage caused by or consisting of: . . .

[w]ater. . . below the surface of the ground, **including water which exerts pressure on . . . [a] foundation**[.]" (Doc. # 61-19 at 26 (emphasis added)); *Arkansas Valley Drilling, Inc. v. Cont'l W. Ins. Co.*, 703 F. Supp. 2d 1232, 1239-42 (D. Colo. 2010) (applying a similar underground water exclusion to conclude that the insurer properly denied coverage for damage caused by the breakage of an underground pipe, resulting in pressure on foundations).

Additionally, the policy's anti-concurrent causation clause states that the above exclusions apply "regardless of . . . [w]hether other causes or events act concurrently or in any sequence with the excluded event to produce the loss." (Doc. # 61-19 at 26.) In other words, even if a covered loss—such as freezing pipes (*id.* at 24)—initiated or was a concurrent cause of the damage to the foundation wall, the Earth Movement and/or Water Damage exclusions still preclude coverage for the resulting damage. *Arkansas Valley Drilling*, 703 F. Supp. 2d at 1239-42 (holding that foundation damage caused by a burst underground pipe was excluded under the policy's earth movement and water under-the-surface exclusions "even if the rupture of the frozen indoor water pipe was the initial or a concurrent event that contributed" to the earth movement and water under the surface because of "the plain meaning of the language of the concurrent or sequential cause provision").

Although the parties dispute whose idea it was initially to hire the engineer whose report provides the bases of USAA's denial (Doc. # 61 at 5; Doc. # 72 at 7, 15), this fact is immaterial. The cause of the crack in the load-bearing basement wall is not disputed. (Doc. # 61-6 at 1); *see also* (Doc. # 61 at 5; Doc. # 72 at 5, 15.) Similarly, although

concerning on a customer service front, Plaintiffs' and Mr. Shepard's reasonable understanding that Ms. Nobles had communicated that damage to the wall was covered, is also immaterial to Plaintiffs' breach of contract claim. Plaintiffs have not argued that Ms. Nobles waived the Policy exclusions and have no legal basis to do so. *Gallegos v. Safeco Ins. Co. of Am.*, 646 F. App'x 689, 695 (10th Cir. 2016) ("[C]overage and exclusion issues are not subject to waiver.").

The Policy unambiguously excludes coverage for damage caused, in whole or in part, concurrently or subsequently, by expanding earth or underground water pressure. (Doc. # 61-19 at 26.) "If a limitation or exclusion in a contract is unambiguous, that limitation or exclusion must be enforced." *State Farm Mut. Auto. Ins. Co. v. Mendiola*, 865 P.2d 909, 912 (Colo. App. 1993); *see also Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996) ("Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law."). Accordingly, USAA has met its burden to demonstrate that the Policy excluded coverage for damage to Plaintiff's basement wall. *See Hecla Min. Co.*, 811 P.2d at 1090.

Plaintiffs do not directly address the applicability of the cited Policy exclusions to their claimed wall damage. Rather, they argue that the Policy's additional coverage for "collapse" either restores coverage for the load-bearing basement wall, or at least creates ambiguity regarding this coverage such that it must be interpreted in their favor. (Doc. # 72 at 20–23.) Because insurance policy exclusions are mandatory and not waivable, for Plaintiffs to succeed on this argument, they must demonstrate that the additional coverage for "collapse" creates an exception (or at least creates ambiguity as

to whether this language constitutes an exception) to the applicable policy exclusions. *Leprino Foods*, 453 F.3d at 1287; *see also Gallegos*, 646 F. App'x at 695; *Mendiola*, 865 P.2d at 912.

For several reasons, the Court concludes that Plaintiffs have not so demonstrated. First, an endorsement to the Policy changed the lead-in paragraph to the ADDITIONAL COVERAGES section to directly address the applicability of the Policy's exclusions to coverage described in that section. This paragraph reads, "[u]nless specifically addressed elsewhere in this policy, the coverages provided [in this section] are the only coverages provided for the following. The SECTION I – LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated." (Doc. # 61-19 at 46.) Thus, the additional coverages section itself does not create exceptions to the Policy exclusions. Rather, this section merely lists types of costs, property, or events for which the Policy provides coverage in addition to those listed in the PROPERTY WE COVER and LOSSES WE COVER sections. Were the Court to read this section as providing coverage for "collapse" even when the collapse is caused by Earth Movement or underground water pressure, the second sentence of this lead-in paragraph would be rendered superfluous. *See Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009) (courts must "choose a construction of the contract that harmonizes provisions instead of rendering them superfluous"); *Cyprus*, 74 P.3d at 299 ("Courts should read the provisions of the policy as a whole, rather than reading them in isolation.").

Plaintiffs' argument that the endorsement expanded coverage for "collapse" because it removed language which previously read "[d]amage consisting solely of cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of collapse" (*id.* at 9), misses the mark. (Doc. # 72 at 22.) The Court agrees that the endorsement removed this language, and therefore that a reasonable insured could understand such a removal as expanding coverage in the occurrence of a collapse. However, the removal of this language has no impact on the exclusions, which the lead-in paragraph explicitly states apply to all additional coverages, including "collapse." (Doc. # 61-19 at 46.)

Second, where there are exceptions to the exclusions, the Policy states them within the LOSSES WE DO NOT COVER section itself, typically directly preceding or following the exclusion language. *See, e.g.*, *Leprino Foods*, 453 F.3d at 1288–89 (examining the impact of the exception—"unless directly resulting from other physical damage"—to an exclusion on a disputed insurance claim); *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 238, (Colo. 1992) (analyzing an exception immediately following an exclusion which stated "this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.") For example, following the definitions of "Earth Movement" for which the Policy excludes coverage, the Policy states the following exception: "unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material is part of a building, storm door or storm window results

and then we will pay only for the resulting loss." (*Id.* at 26.) The parties do not argue that this exception applies to the facts of this case.

Another example of language creating exceptions to exclusions can be seen in the "Losses we do not cover under dwelling protection and other structures protection" section. This section lists 16 events—including "settling; cracking; [or] bulging . . . of . . . foundations—for which the Policy does not extend coverage, unless any of these events "directly **causes** a 'named peril(s)' to occur, the resulting damage produced by the 'named peril(s)' is covered." (*Id.* at 25 (emphasis added.)) The "named peril(s)," in turn, include "[f]reezing of a plumbing . . . system," but notably do not include "collapse." (*Id.* at 10, 23–24.) Even if "collapse" were a "named peril" the language of this exception, itself contains an exception for losses "excluded or excepted elsewhere in this policy" such as losses caused by Earth Movement. (*Id.* at 24.)

In making the determination that the additional coverage for "collapse" does not create an exception to the Policy's exclusions, the Court makes no conclusion as to whether the damage to Plaintiff's load-bearing basement wall could be considered a "collapse" as defined by the Policy. (*Id.* at 9.) This is because, even if Plaintiffs could show that their basement wall experienced a "sudden breaking apart or deformation such that [it was] in imminent peril of falling or caving in," coverage is still barred by the Earth Movement and Water Damage exclusions. *See Naabani Twin Starts, LLC v. Travelers Cos., Inc.*, No. 20-2161, 2021 WL 4737119, *1 (10th Cir. Oct. 12, 2021) ("But even if the building had suffered a collapse, coverage would have been precluded by the earth movement exclusion.")

The Court is sympathetic that the Policy is difficult to read, requiring cross-referencing multiple sections and untangling exceptions within exceptions. However, such challenges are not the same as, and do not necessarily create, ambiguity within the Policy. *Bailey*, 255 P.3d at 1051 (explaining that ambiguity exists when "the question of whether certain coverage exists is 'susceptible to more than one reasonable interpretation,'" (quoting *Cary*, 108 P.3d at 290) and that whether ambiguity exists "is always an objective test"). An ordinary, reasonable insured, construing the Policy carefully and as a whole, would understand the Policy to exclude coverage for damage caused by water from a burst underground pipe mixing with soil to exert pressure on a foundation. (Doc. # 61-19 at 26.) Plaintiffs have not put forth a different, reasonable interpretation of the policy sufficient to demonstrate ambiguity and have not met their burden to establish that their loss is included in an exception to the applicable policy exclusions.

Thus, the Court concludes that USAA is entitled to summary judgment on Plaintiffs' breach of contract claim as it relates to the damage to Plaintiff's load-bearing basement wall. *See Leprino Foods*, 453 F.3d at 1287.

3.  Application – Plumbing, Furnace, and Hot Water Heater

USAA also did not pay to replace Plaintiffs' hot water heater and furnace or for covered plumbing work.[10] (Doc. # 61-9 at 1; Doc. # 72-13 at 19.) USAA does not argue

---

[10] The Court notes that neither party has pointed to documentation of a formal denial of coverage for these losses. However, it is undisputed that Plaintiffs requested coverage—but did not receive any payments—for plumbing work and for replacement of their furnace and hot water heater.

that these losses were excluded or otherwise fell outside the Policy's coverage. Rather, USAA argues that it is entitled to summary judgment on these elements because Plaintiffs' failure to provide USAA with requested information constitutes breach of a condition precedent to coverage. (Doc. # 61 at 21–24.) Plaintiffs assert that (1) they provided USAA with all relevant documentation in existence, and (2) if USAA needed additional information, it was USAA's obligation—as the party with the nondelegable duty to investigate claims—to hire an adjuster or service provider to acquire that information. (Doc. # 72 at 23–25.)

In Colorado, a requirement in an insurance policy that the insured cooperate in the claim investigation, such as by providing the insurer with documentation, is "valid and enforceable." *Farmers Auto. Inter-Insurance Exchange v. Konugres*, 202 P.2d 959, 962 (Colo. 1949). Where such a requirement exists, an insured who "fails to cooperate with the insurer in some material and substantial respect" may forfeit the right to recover. *State Farm Mut. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001). However, failure to cooperate constitutes a breach on the part of an insured only where the insurer suffers "material and substantial disadvantage." *Id.*

"Whether there has been 'cooperation' on the part of an assured . . . is usually a question of fact." *Konugres*, 202 P.2d at 963; *see also Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989) ("Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court."). In addition, what might appear initially to be a breach of the cooperation clause "may be excused, if it develops that the failure of the assured was

due to mistake, and that there was no exercise of bad faith on his part." *Konugres*, 202 P.2d at 962.

In the instant case USAA points to evidence that it repeatedly requested specific information regarding the plumbing, furnace, and hot water heater from Plaintiffs. (Doc. # 61-10 at 1–6; Doc. # 61-12 at 3; Doc. # 61-17 at 3.) It is undisputed that USAA never received this information.[11] *See* (Doc. # 61 at 9; Doc. # 72 at 17.) However, there is no evidence that USAA informed Plaintiffs that they were not cooperating in the claim investigation or provided them notice that their insurance benefits could be forfeited for failure to provide the information. Further, USAA only provides a conclusory statement regarding the disadvantage it asserts it suffered because of Plaintiffs' alleged failure to cooperate. (Doc. # 61 at 23); *see Secrist*, 33 P.3d at 1275; *Mountain Food, LLC v. Sentry Ins. a Mut. Co.*, 636 F. Supp. 3d 1307, 1311 (D. Colo. 2022) (declining to grant defendant summary judgment where insurer failed to argue it was materially or substantially disadvantaged by plaintiff's alleged noncooperation).

Plaintiffs argue that they substantially complied with the duty to provide records by providing all the estimates, photos, and reports they did have. (Doc. # 61-10 at 3–6; Doc. # 61-14 at 1–2; Doc. # 61-15 at 2; Doc. # 61-18 at 1.) Plaintiffs have also pointed

---

[11] USAA asserts that "[i]t would have been simple for Plaintiffs to provide at least the appliances' brands and model numbers when they were still in Plaintiffs' basement after the pipe burst." (Doc. # 61 at 23 n.3); *see also* (Doc. # 76 at 9 n.4.) However, the Court notes that neither party has briefed sufficient facts to demonstrate this establishes Plaintiffs failed to cooperate. For example, it is unclear when the old furnace and hot water heater were removed from Plaintiffs' home. Further, during at least some of the time when USAA was requesting information regarding these appliances Plaintiffs were living in temporary accommodations paid for by USAA and their home was considered unsafe or uninhabitable. (Doc. # 61-9 at 1; Doc. # 61-10 at 1; Doc. # 61-12 at 3; Doc. # 72-12 at 14.)

to the deposition testimony of Mr. Shepard and multiple USAA claims adjusters who stated that Plaintiffs were cooperative and responsive throughout the relevant time. (Doc. # 72-11 at 12, 20; Doc. # 72-12 at 30; Doc. # 72-14 at 17.) Finally, Plaintiffs point out that USAA had many available resources to acquire the information it sought, including sending Mr. Shepard or a service technician to Plaintiffs home. (Doc. # 72-11 at 28; Doc. # 72-12 at 9; Doc. # 72-13 at 17, 19, 37.)

Having carefully reviewed the summary judgment briefing, evidence, and relevant case law, the Court concludes that Plaintiffs have presented admissible evidence that could lead a reasonable jury to conclude they complied with the Policy's duty to provide documentation. *Adler*, 144 F.3d at 671. Therefore, a factual dispute regarding Plaintiffs' cooperation remains and summary judgment on Plaintiffs' breach of contract claim is inappropriate as it relates to the plumbing, furnace, and hot water heater losses.

## B.    COMMON LAW BAD FAITH AND STATUTORY UNREASONABLE DENIAL

USAA argues that it is entitled to summary judgment on Plaintiffs' claims for common law bad faith and statutory unreasonable delay or denial of insurance benefits on the basis that Plaintiffs cannot establish that USAA acted unreasonably in handling their claim. (Doc. # 61 at 24–26.) In response, Plaintiffs contend that a reasonable jury could determine that USAA acted unreasonably by (1) denying coverage for various elements of their claim, (2) failing to hire someone to gather the information it needed regarding Plaintiffs' plumbing and appliances, (3) misrepresenting that the damage to the load-bearing basement wall was covered, (4) limiting, and then terminating benefits

for additional living expenses prior to the completion of repairs, and (5) by estimating covered losses as less than the Policy's deductible despite other evidence of much higher costs to repair covered losses. (Doc. # 72 at 25.) The Court agrees with Plaintiffs that summary judgment is not appropriate as it relates to these claims.

Under Colorado law, both common law and statutory bad faith claims require a showing of unreasonable conduct. *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *5 (D. Colo. Sept. 30, 2021). A common law bad faith claim requires the insured to prove "(1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1114 (D. Colo. 2012). A statutory bad faith claim, meanwhile, requires the insured to prove that the insurer denied or delayed the payment of insurance benefits without a reasonable basis. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 23, 419 P.3d 985, 990, *aff'd by State Farm Mut. Auto. Ins. Co. v. Fisher*, 2018 CO 39, ¶ 27, 418 P.3d 501, 506; *see* Colo. Rev. Stat. § 10-3-1115(1)(a) ("A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.").

What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. *Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). The

reasonableness of an insurer's conduct is measured objectively based on industry standards. *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004). Under Colorado law, it is reasonable for an insurer to challenge claims that are "fairly debatable." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). However, "an insurer cannot rely on the mere fact that the claim was fairly debatable in order to prove that it acted reasonably as a matter of law." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1206 (D. Colo. 2022). The central question "is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim." *Bankr. Est. of Morris*, 192 P.3d at 523.

For the reasons discussed above, the Court concludes that it was reasonable for USAA to deny coverage for Plaintiffs' load-bearing basement wall. However, the Court finds that USAA has not established that the undisputed material facts show that it is entitled to summary judgment on the issue of whether it acted unreasonably in handling the other aspects of Plaintiffs' claim. To the contrary, a reasonable jury could determine that USAA engaged in unreasonable conduct, when, amongst other things, it failed to pursue other available resources to acquire information regarding Plaintiffs' plumbing and appliances and then denied Plaintiffs coverage for these losses on the basis of their alleged noncooperation. *See, e.g.*, *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 147 n.7 (Colo. 2007) ("[B]ad faith can occur in the unreasonable refusal to investigate a claim or to gather facts.").

Because genuine disputes of material fact remain concerning the reasonableness of USAA's claim handling, the Court finds that this is a question appropriately reserved for the jury. *Vaccaro*, 275 P.3d at 759.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant USAA's Motion for Summary Judgment (Doc. # 61) is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to all three of Plaintiffs' claims as they relate to insurance benefits for damage to land and to Plaintiffs' load-bearing basement wall. The Motion is DENIED in all other respects.

DATED: January 24, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge